1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3    ALLEN HORTON II,                          Case No.: 3:22-cv-00487-CSD

4        Plaintiff                              **Order**

5    v.                                         Re: ECF Nos. 29, 34

6    FRAZIER, et al.,

7        Defendants

8

9        Defendants filed a motion for summary judgment. (ECF Nos. 29, 29-1 to 29-6, 31-1 to

10   31-2) Plaintiff filed a response. (ECF No. 43.) Defendants did not file a reply.

11       Plaintiff also filed a motion for summary judgment. (ECF No. 34.) Defendants filed a

12   response. (ECF No. 37.) Plaintiff did not file a reply.

13       For the reasons set forth below, Plaintiff's motion is denied, and Defendants' motion is

14   granted in part and denied in part.

15                              **I. BACKGROUND**

16       Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

17   proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving

18   rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center

19   (NNCC). The court screened Plaintiff's complaint and allowed him to proceed with a single

20   Eighth Amendment deliberate indifference to serious medical needs claim against defendants

21   Gaylene Fukagawa, Melissa Mitchell, Kellen Nomura (named by Plaintiff as Kellon), and

22

23

1  Dr. Joseph Benson.[1]

2      Plaintiff alleges that he has serious medical needs stemming from sleep apnea, which

3  causes difficulty breathing. He claims that to address this, Dr. Benson ordered a CPAP machine

4  for him on April 1, 2022, and although NDOC's Utilization Review Committee (URC) approved

5  the request later that month, Plaintiff did not receive the machine until September 1, 2022. He

6  avers that in the meantime his breathing difficulties worsened, and he submitted numerous kites

7  and grievances requesting Defendants given him an oxygen tank temporarily or give him his

8  CPAP machine. He claims, however, that they did not allow him to resume using his oxygen

9  tank, and they failed to expedite shipment of the CPAP machine.

10      Defendants move for summary judgment, arguing: (1) Plaintiff failed to exhaust his

11  administrative remedies; (2) Defendants are entitled to qualified immunity because there was no

12  Eighth Amendment violation of a clearly established constitutional right; and (3) there was no

13  personal participation by Defendants.

14      Plaintiff also moves for summary judgment, arguing that Defendants violated his Eighth

15  Amendment rights when he was not given his CPAP machine for five months and was not given

16  an oxygen tank in the meantime.

17                        **II. LEGAL STANDARD**

18      The legal standard governing this motion is well settled: a party is entitled to summary

19  judgment when "the movant shows that there is no genuine issue as to any material fact and the

20  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

21

22  [1] The Attorney General's Office accepted service on behalf of these four Defendants and an
   answer was filed on their behalf. (ECF Nos. 16, 17.) Defendants' motion for summary judgment
   identifies a Kellen Prost instead of Kellen Nomura. (ECF No. 29.) The court will assume that
23  Kellen Nomura and Kellen Prost are the same individual, and this Order will refer to the
   defendant as Kellen Nomura as no motion was made to correct the docket.

1  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

2  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

3  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

4  of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

5  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

6  other hand, where reasonable minds could differ on the material facts at issue, summary

7  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

8      "The purpose of summary judgment is to avoid unnecessary trials when there is no

9  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

10  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

11  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

12  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

13  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

14  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

15  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

16  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

17  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

18  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

19  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

20  *Anderson*, 477 U.S. at 249.

21      In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

22  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

23  come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party cannot establish an element essential to that party's case on which that party will have the

burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to

establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Plaintiff's Motion**

A motion for summary judgment must include a concise statement setting forth each fact

material to the disposition of the motion that the party claims is or is not genuinely in issue and

1 | must cite the particular portions of materials in the record, including any pleading, affidavit,

2 | deposition, interrogatory, answer, admission or other evidence on which the party relies. Fed. R.

3 | Civ. P. 56(c)(1)(A); LR 56-1.

4 |      Plaintiff's statement of undisputed facts fails to comply with this directive as it does not

5 | cite any evidence to support the facts Plaintiff claims are undisputed. (*See* ECF No. 34 at 5-6.)

6 | As such, Plaintiff's motion for summary judgment is denied.

7 | **B. Defendants' Motion**

8 |      **1. Exhaustion**

9 |      The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought

10 | with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

11 | prisoner confined in any jail, prison, or other correctional facility until such administrative

12 | remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

13 | administrative remedies irrespective of the forms of relief sought and offered through

14 | administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

15 |      The failure to exhaust administrative remedies is "'an affirmative defense the defendant

16 | must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v.*

17 | *Bock*, 549 U.S. 199, 204, 216 (2007).

18 |      "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure

19 | to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are

20 | disputed, summary judgment should be denied, and the district judge rather than a jury should

21 | determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71 (citations omitted).

22 |      Once a defendant shows that the plaintiff did not exhaust available administrative

23 | remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is

1 | something in his particular case that made the existing and generally available administrative

2 | remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d

3 | 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate

4 | plaintiff did not meet his burden when he failed to identify any actions prison staff took that

5 | impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to

6 | comply with the administrative remedies process)). The ultimate burden of proof, however,

7 | remains with the defendant. *Id*.

8 |     Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm

9 | grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89

10 | (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so

11 | *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original)

12 | (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a)

13 | requires an inmate not only to pursue every available step of the prison grievance process but

14 | also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654,

15 | 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and

16 | not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199,

17 | 218 (2007).

18 |     Defendants argue that Plaintiff did not complete the grievance process with respect to the

19 | issue raised in this action.

20 |     To exhaust administrative remedies an inmate must comply with the inmate grievance

21 | procedure set forth in NDOC's Administrative Regulation (AR) 740.[2] AR 740 generally requires

22 |

---

23 | [2] Defendants did not submit the relevant version of AR 740 as an exhibit. Nor did they request the court take judicial notice of the regulation. Plaintiff did happen to include it as an exhibit. In the future, the Attorney General's Office shall attach as an exhibit the relevant version of AR

1 | an inmate to complete three levels of a grievance in order to exhaust administrative remedies:

2 | informal, first and second levels. (ECF No. 43 at 41-46.)

3 |      Grievances may be granted, denied or partially granted at any level. (ECF No. 43 at 37.)

4 | If a grievance is "granted" at any level, the grievance process is considered complete and the

5 | inmate's administrative remedies exhausted. If the inmate files a grievance at a higher level after

6 | it has been granted at a lower level, the grievance will be screened out and the notation in the

7 | rejection form will state that the grievance has already been granted. (ECF No. 43 at 40.)

8 |      Plaintiff submitted an informal level grievance for grievance 20063135327 on March 7,

9 | 2022, stating that he had been ordered oxygen and a wheelchair, which were taken from him on

10 | February 1, 2022, when he was sent to the "hole." He asked the nurses if he could have his

11 | oxygen as he started having difficulty breathing, to no avail. (ECF No. 29-2 at 8-9; ECF No. 39

12 | at 46-47.)

13 |      J. Isaacson responded on March 30, 2022, that Plaintiff was seen in the clinic on January

14 | 26, 2022, and stated he no longer needed the oxygen tank, and his oxygen saturation level was

15 | 96%. He was instructed to send a request to medical if he felt his needed an oxygen tank again.

16 | The grievance was denied. (ECF No. 29-2 at 7; ECF No. 34 at 45.)

17 |      Plaintiff submitted a first level grievance on April 17, 2022, stating that he saw a

18 | provider, and Plaintiff informed the provider he did need his oxygen. Tests were conducted and

19 | the provider ordered a CPAP machine, but Plaintiff had not yet received the machine. He

20 | claimed that he spoke with Nurse Gaylene (Fukagawa) and informed her that he had not received

21 | his CPAP machine and was unable to lie on his back because his breathing would stop. Nurse

22 |

23 |

---

740 when arguing that a defendant is entitled to summary judgment because an inmate failed to
exhaust administrative remedies.

Gaylene allegedly told him the prison could not afford CPAP machines. Plaintiff requested a

breathing machine as soon as possible. (ECF No. 29-2 at 3-6; ECF No. 34 at 44.)

C. Lucas responded to the first level grievance on May 2, 2022, and advised Plaintiff that

the CPAP machine had been approved for purchase through the URC, and an order for the

purchase was written on April 21, 2022. Plaintiff was informed that he would be called to get the

machine on receipt. The grievance was designated as "resolved." (ECF No. 29-2 at 2; ECF No.

34 at 42.)

Plaintiff submitted a second level grievance on May 30, 2022, stating that his grievance

had not been resolved because he had not yet received his CPAP machine. He noted he still had

breathing issues which could get worse without the CPAP machine. (ECF No. 29-2 at 11; ECF

No. 34 at 40-41.)

The second level grievance was rejected by AWP Hartman on June 13, 2022, because the

grievance had already been granted, partially granted or resolved at the prior level. (ECF No. 29-

2 at 10; ECF No. 34 at 39.)

Plaintiff then initiated grievance 20063140253 at the informal level on July 11, 2022,

stating that he had been ordered a CPAP machine over two months prior that he had still not

received. He asked for his CPAP machine or a temporary oxygen tank. The informal level

grievance also asked about receiving his medical common fare diet. (ECF No. 29-3 at 2, 5-10;

ECF No. 34 at 36-38.)

Jessica Rambur rejected the informal level grievance on July 20, 2022, both because it

had more than one issue and it raised specific claims or incidents previously filed by Plaintiff.

(ECF No. 29-3 at 3, 20; ECF No. 34 at 35.)

Plaintiff submitted another informal level grievance on October 16, 2022. He noted that his grievance 20063135327 was not accepted at the second level, and then he submitted this grievance on a similar issue, which was returned for having more than one issue. He asked that this grievance be accepted. (ECF No. 29-3 at 14-18; ECF No. 34 at 33-34.)

Jessica Rambur rejected this informal grievance as well on October 26, 2022, with a notation that the claim or requested remedy changed or was modified from one level to another. (ECF No. 29-3 at 12; ECF No. 34 at 32.)

Plaintiff submitted a third informal level grievance on November 30, 2022, noting he still had not received his CPAP machine or a temporary oxygen tank. (ECF No. 29-3 at 26-32; ECF No. 34 at 29-31.)

J. Isaacson responded on January 3, 2023, stating that Plaintiff had been issued his CPAP machine, and the grievance was resolved. (ECF No. 29-3 at 24; ECF No. 34 at 28.)

When Plaintiff attempted to proceed to the second level of grievance 20063135327, he was told he could not do so because his grievance had already been resolved. Therefore, Plaintiff completed the grievance process with respect to grievance 20063135327.

Similarly, Plaintiff's informal level grievance for grievance 20063140253 was eventually determined to be resolved. As Plaintiff had previously been told he could not proceed to the next level after a grievance was deemed resolved, it is reasonable conclude that Plaintiff completed the grievance process for grievance 20063140253 as well.

In sum, Plaintiff did exhaust administrative remedies before filing this action. Insofar as Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust administrative remedies, their motion is denied.

///

**2. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

10

1    under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present

2    when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

3    official must both be aware of the facts from which the inference could be drawn that a

4    substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

5    511 U.S. 825, 837 (1994).

6         Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally

7    interfere[s] with medical treatment, or it may be shown by the way in which prison officials

8    provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

9    quotation marks and citation omitted).  "'[A] prisoner need not prove that he was completely

10   denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*,

11   681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other*

12   *grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical

13   treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *Stewart v.*

14   *Aranas*, 32 F.4th 1192, 1195(9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*,

15   766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

16        "A difference of opinion between a physician and the prisoner—or between medical

17   professionals—concerning what medical care is appropriate does not amount to deliberate

18   indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

19   Instead, to establish deliberate indifference in the context of a difference of opinion between a

20   physician and the prisoner or between medical providers, the prisoner "'must show that the

21   course of treatment the doctors chose was medically unacceptable under the circumstances' and

22   that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's

23   health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

11

1    **3. Medical Evidence**

2         Preliminarily, Defendants have filed *hundreds* of pages of records to support their

3    motion; however, the majority of these records have absolutely no relevance to the claim

4    proceeding in this action. (*See* ECF No. 31-1 at 2-124, 126, 128, 133-34, 137-39, 141-43, 145,

5    147-151, 153-60, 162-236, 245-258, 253-67, 269-72, 275-324, 327-334, 339, 341-404; ECF No.

6    31-2 at 2-206, 211-261, 263-65, 267-360, 363-387.) Defense counsel is admonished to refrain

7    from submitting irrelevant material in exhibits in future filings with the court.

8         Plaintiff's medical records reflect the following:

9         On May 11, 2021, it was ordered that Plaintiff could have a portable oxygen tank to use

10   when he gets winded, and Plaintiff was issued the portable oxygen tank along with a wheelchair.

11   (ECF No. 31-1 at 273; ECF No. 31-2 at 266.)

12        On August 25, 2021, Plaintiff reported that he was having trouble sleeping and was

13   waking up tired. His provider, APRN Villegas, ordered a sleep study to rule out obstructive sleep

14   apnea. Villegas noted that Plaintiff was high risk for obstructive sleep apnea and had a history of

15   hypertension and congestive heart failure. The request for the sleep study was authorized on

16   September 1, 2021. (ECF N. 31-1 at 242, 268, 335.) Plaintiff underwent the sleep study on

17   September 30, 2021, and the results were signed by Dr. Ajay Pillai on October 7, 2021. It was

18   noted that the study results (AHI of 8)[3] were suggestive of mild obstructive sleep apnea, which

19   would merit therapy if associated with significant sleep disturbance, daytime somnolence and/or

20   cardiovascular risk factors like hypertension and diabetes. (ECF No. 31-2 at 361-62.)

21

22

23   [3] AHI refers to Apnea Hypopnea Index, which is "the number of apneas or hypopneas recorded
     during the study per hour of sleep." *See* Understanding the Results | Sleep Medicine, last visited
     November 6, 2024.

On December 8, 2021, Plaintiff requested to be removed from his wheelchair and oxygen. (ECF No. 31-1 at 161.) Plaintiff was seen in the clinic on January 26, 2022, and said he wanted to get rid of his wheelchair and oxygen. It was noted that his oxygen saturation was 96%, but Plaintiff did not return to the clinic to give back his wheelchair. (ECF No. 31-1 at 239.)

On March 4, 2022, Plaintiff sent a medical request (also referred to as a "kite") stating that he needed his oxygen and wheelchair that he had not had since February 1, 2022. (ECF No. 31-1 at 152.) The response indicates Plaintiff needed to be evaluated as he had previously been ordered a wheelchair and oxygen. There is a subsequent note stating that Plaintiff was on the yard when the nurse went to see him on March 9, 2022, and he did not have a wheelchair or oxygen and was walking without difficulty toward the weight pile. (*Id.*)

There is an order dated March 17, 2022, for a CPAP machine for bedside. (ECF No. 31-1 at 262.) It is unclear who placed this order.

On March 23, 2022, Plaintiff sent a medical request stating that he had an order for a CPAP machine, but he had not received it yet. The response states that Plaintiff was seen on April 21, 2022. (ECF No. 31-1 at 144.) Plaintiff sent another medical request on April 6, 2022, stating that a CPAP machine had been ordered, but he had not received it, and his breathing "goes and comes" when he lies on his back. The response states: "042122." (*Id*. at 146.)

Plaintiff was seen on April 21, 2022. (ECF No. 31-1 at 238.) APRN Villegas requested the CPAP machine considering the sleep study recommendation. This was authorized by the URC on May 4, 2022. (ECF No. 31-1 at 325.)

Plaintiff sent a kite on May 7, 2022, asking to receive oxygen which he claimed was ordered by Dr. Benson, noting he was having difficulty breathing when trying to sleep. (ECF No. 34 at 20.)

1       On May 22, 2022, Plaintiff sent a kite asking why he had not received his CPAP. He said

2  he was dealing with breathing issues and needed it as soon as possible. The response states:

3  "prev. discussed – pending shipping – no further response[.]" (ECF No. 31-1 at 140.) Plaintiff

4  sent another kite on June 7, 2022, stating that he struggled to breathe while lying on his back to

5  sleep, noting he still had not received the ordered CPAP machine. The response states: "CPAP

6  ordered." (ECF No. 31-1 at 132.) His next request was sent on June 19, 2022. He still had not

7  received the CPAP machine and was dealing with labored breathing. He said Nurse Gaylene told

8  him the person who sends the machine was on vacation for two weeks, but that was four weeks

9  prior. The response states: "CPAP ordered." (ECF No. 31-1 at 131.)

10       On June 22, 2022, he sent another kite stating he had spoken with Gaylene the day before

11  about the CPAP machine he had not yet received, and Gaylene told him that the prison was

12  broke so he would just have to wait. Plaintiff told Gaylene he was having continued beathing

13  issues. He asked if he could have an oxygen tank until he received his CPAP machine. The

14  response states that the CPAP was on order, and they were waiting for it to arrive. (ECF No. 31-

15  1 at 129.)

16       Plaintiff was seen on June 27, 2022, and it was noted that he asked about his CPAP

17  machine. (ECF No. 31-1 at 238.)

18       Plaintiff sent a request on June 28, 2022, stating that when he saw the provider the day

19  before it was confirmed the CPAP was ordered, but it was not received. Plaintiff noted he was

20  having breathing issues at night and requested an oxygen tank in the meantime, but this request

21  was refused. He was again told that the CPAP was on order, and they were waiting for it to

22  arrive. (ECF No. 31-1 at 130.)

23

Plaintiff sent a kite on July 9, 2022, asking about the CPAP machine he claimed was ordered by Dr. Benson over a month prior. He reported that it was difficult for him to sleep on his back. He had asked the nurses for an oxygen tank, but he had not received anything. A response dated July 13, 2022, states the CPAP machine had been ordered, but had not arrived yet. (ECF No. 31-1 at 136.) Plaintiff sent another request on July 12, 2022, stating that he needed the CPAP machine as his breathing was getting worse at night. On July 19, 2022, he was told that the CPAP was on order, but they did not have a date when it would arrive. (ECF No. 31-1 at 135.) Plaintiff sent a request on July 25, 2022, noting he had not received the CPAP machine and that his breathing was getting worse at night. He requested to see a provider. He was told that his kite had been received and would be reviewed, triaged, and he would be scheduled as appropriate. (ECF No. 31-1 at 127.)

On August 15, 2022, Plaintiff sent a request stating that he continued to have difficulty breathing while lying down. He requested his CPAP machine or oxygen. He was told in response that the CPAP machine had been ordered and should arrive the week of August 22, 2022. (ECF No. 31-1 at 125.)

There is a notation dated August 21, 2022, that AH1 was 17.2 and "no CPAP needed." (ECF No. 31-1 at 325.)

Plaintiff sent a kite on August 24, 2022, to Lieutenant Miller noting he had not received the CPAP machine or oxygen, and he had congestive heart failure and difficulty breathing. (ECF No. 34 at 26.)

The CPAP machine was finally delivered on August 29, 2022. (ECF No. 31-2 at 207.)

There is an order dated August 31, 2022, to discontinue the order for the CPAP as Plaintiff's supine AH1 was 17.2. (ECF No. 31-1 at 259.)

1    Plaintiff was nevertheless issued the CPAP and supplies on September 1, 2022. (ECF No.

2    31-1 at 237; ECF No. 31-2 at 262.)

3    **4. Personal Participation**

4    "42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of

5    state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297

6    F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable

7    under section 1983 there must be a showing of personal participation in the alleged rights

8    deprivation[.]" *Id*. (citations omitted).

9    When an official is sued under 42 U.S.C. § 1983, the inmate "must show that each

10   defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218,

11   1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 140 S.Ct. 159 (2019)

12   ("inmates must show that each defendant personally played a role in violating the constitution.").

13   Defendants argue there is no evidence to indicate the personal participation by the

14   Defendants. They argue that Dr. Benson did not order the CPAP machine, and none of the

15   Defendants have control over the schedule of the third-party company that provided the CPAP

16   machine.

17   It appears correct that Dr. Benson did not order the CPAP machine, at least the order that

18   was approved by the URC. Instead, the medical records reflect that APRN Villegas—who is not

19   a defendant—ordered the CPAP machine that the URC approved. Plaintiff claimed in his May 7,

20   2022, kite that Dr. Benson had previously ordered him oxygen. Plaintiff also reported in his

21   informal level grievance on July 11, 2022, that he asked Dr. Benson if he could be provided with

22   a temporary oxygen tank to breathe at night, and this request was denied. In his grievance on

23   November 30, 2022, Plaintiff also said that he inquired of Dr. Benson regarding the CPAP

1   machine and an oxygen tank as he was still having difficulty breathing. Therefore, Plaintiff has

2   raised at least a genuine dispute of material fact as to whether Dr. Benson personally participated

3   in the alleged constitutional violation.

4          The court will now address the personal participation of the remaining defendants:

5   Gaylene Fukagawa, Melissa Mitchell, Kellen Nomura. While none of these defendants may have

6   had control over the schedule of the third-party company that was providing the CPAP machine,

7   that does not mean they were free to ignore Plaintiff's complaints concerning his difficulty

8   breathing and request for oxygen while he awaited the arrival of the CPAP machine.

9          That being said, the only Defendant that is mentioned specifically by name that Plaintiff

10  claims he advised of his difficulty breathing, the fact that he had not received the ordered CPAP

11  machine, and request for oxygen is Gaylene Fukagawa. (*See* ECF No. 34 at 44 (first level

12  grievance stating Plaintiff spoke with Nurse Gaylene regarding his difficulty breathing and non-

13  receipt of the CPAP machine); ECF No. 31-1 at 140 (May 22, 2022, kite regarding his CPAP

14  machine and breathing issues); ECF No. 31-1 at 129 (June 22, 2022 kite regarding discussions

15  with Gaylene about breathing difficulties, non-receipt of the CPAP machine and request for

16  oxygen).)

17         Neither Plaintiff's own motion, nor his response to Defendants' motion, points to

18  evidence to raise a genuine dispute of material fact as to the personal participation of either

19  Melissa Mitchell or Kellen Nomura.

20         Therefore, summary judgment is granted in favor of Melissa Mitchell and Kellen

21  Nomura. Defendants' motion is denied insofar as Defendants argue that Gaylene Fukagawa and

22  Dr. Benson should be dismissed due to lack of personal participation.

23  ///

17

**5. Qualified Immunity**

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Defendants argue they are entitled to qualified immunity because there was no violation of the Eighth Amendment, and no established case law would have put Defendants on notice that their conduct violated Plaintiff's rights.

Defendants assert that after a sleep study ordered by a non-defendant medical provider, it was determined that Plaintiff had mild sleep apnea, and a non-defendant medical staff member issued an order for Plaintiff to receive a CPAP machine. They assert that medical staff continually responded to Plaintiff's inquiries about the CPAP machine, informing him it had been ordered, but they were waiting on it to arrive to NDOC. According to Defendants, a medical provider subsequently noted Plaintiff no longer needed the CPAP machine as his AHI score no longer indicated he needed one, but he nevertheless received the CPAP machine on September 1, 2022. Defendants further contend there is nothing in the record to indicate that the delay in delivering the CPAP machine resulted in further injury to Plaintiff.

The court finds Defendants Fukagawa and Dr. Benson are not entitled to qualified immunity. First, taking the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that these Defendants violated Plaintiff's rights under the Eighth Amendment.

As to Dr. Benson, Plaintiff has provided evidence that Dr. Benson had previously ordered him oxygen; that Plaintiff asked Dr. Benson if he could be provided with temporary oxygen to

1  breathe at night, and his request was denied; and when he was still having difficulty breathing, he

2  asked Dr. Benson about his CPAP machine and an oxygen tank, to no avail.

3        The record similarly contains evidence that Plaintiff told Gaylene Fukagawa that he

4  continued to experience a lack of sleep due to difficulties breathing at night, that he had not

5  received his ordered CPAP machine, and that he was requesting an oxygen tank while he awaited

6  arrival of the CPAP machine. Defendants are correct that the responses to his kites advised him

7  the CPAP machine had been ordered and they were awaiting its arrival, but there is no evidence

8  that Gaylene Fukagawa addressed Plaintiff's complaints that he was still having difficulty

9  breathing at night or his need for supplemental oxygen.

10        Insofar as Defendants argue there is no evidence that any delay in receiving the CPAP

11  machine led to injury, the record is riddled with Plaintiff's complaints that he continued to suffer

12  difficulty breathing at night and lack of sleep while he waited for his CPAP machine.

13        Defendants also argue that Plaintiff was seen numerous times between the ordering and

14  delivery of his CPAP machine, but they do not cite corroborating evidence, and the court is not

15  willing to comb through nearly 800 pages of records to unearth this alleged evidence.

16        Finally, Defendants appear to argue there is a difference of opinion because on August

17  31, 2022, a medical provider noted that Plaintiff no longer needed a CPAP machine.

18  It is not clear who made this notation. Nor are there records that Plaintiff underwent another

19  sleep study. Moreover, Plaintiff's AHI from the earlier sleep study was 8 overall and apparently

20  merited treatment. Defendants fail to explain why a higher AHI would result in discontinuing the

21  order for the CPAP machine, particularly where Plaintiff continued to complain about difficulty

22  breathing at night. Importantly, Plaintiff was still issued the CPAP machine on September 1,

23  2022.

1    Second, the court finds that the law was clearly established in this regard. *See Lolli v.*

2 *County of Orange*, 351 F.3d 410, 420-21 (9th Cir. 2003) (reversing grant of summary judgment

3 to prison officials who were on notice of pretrial detainee's diabetic condition and need for food,

4 but who denied him medical attention); *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir.

5 2014) (denying, delaying, or interfering with medical treatment can violate the constitution).

6    Therefore, Defendants' motion is denied insofar as Dr. Benson and Fukagawa argue that

7 they are entitled to summary judgment based on qualified immunity.

8                                **IV. CONCLUSION**

9    Plaintiff's motion for summary judgment (ECF No. 34) is **DENIED**.

10    Defendants' motion for summary judgment (ECF No. 29) is **GRANTED** as to

11 Defendants Melissa Mitchell and Kellen Nomura but is **DENIED** as to Defendants Gaylene

12 Fukagawa and Dr. Benson.

13    The Clerk shall enter judgment in favor of defendants Melissa Mitchell and Kellen

14 Nomura.

15 **IT IS SO ORDERED**.

16

17 Dated: November 7, 2024

18    _____
                                Craig S. Denney
19                              United States Magistrate Judge

20

21

22

23